# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| DAVID S. LUGO | ) | |
| FRANCIS LUGO | ) | Number 13-4083 |
| (Chapter 13 Case Number 13-42087) | ) | |
| | ) | |
| *Debtors* | ) | |
| | ) | **FILED** |
| | ) | **Lucinda B. Rauback, Clerk** |
| DAVID S. LUGO | ) | **United States Bankruptcy Court** |
| FRANCIS LUGO | ) | **Savannah, Georgia** |
| | ) | ***By lbarnard at 11:52 am, Apr 01, 2014*** |
| *Plaintiffs* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ISLANDS MOTORSPORTS, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## OPINION AND ORDER

The above-captioned case came on for trial on February 10, 2014. After consideration of the pleadings, the parties' stipulations, the evidence, and applicable law, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The parties entered into a Pre-Trial Stipulation which was accepted by the

Court and is quoted herein verbatim:

> Stipulated Facts not in dispute:
>
> On February 23, 2013, Plaintiff David S. Lugo entered into a Retail Installment Contract and Security Agreement with Defendant Island [sic] Motorsports, LLC, for the purchase of a 2003 Dodge Ram 1500 Truck. Debtor filed under Chapter 13 July 23rd, 2013, at that time he was past due in payments to Defendant. The plan in this case did not provide for making any pre-confirmation adequate protection payments to Islands Motorsports, LLC. On November 1, 2013, the Debtor filed a motion for voluntary dismissal of this chapter 13 case. On November 4, 2013, the Defendant repossessed the vehicle. On November 7, 2013, the court filed an order dismissing the Plaintiff's case.
>
> On November 7, 2013, the Plaintiff and his wife filed a chapter 13 bankruptcy case. Defendant was scheduled as a creditor and the Court Clerk Certificate of service shows notice issued to Defendant's correct address. On November 17, 2013, the Defendant sold the collateral to a third party.
>
> The proposed plan in the second Chapter 13 did not provide for pre-confirmation adequate protection payments to Islands Motorsports, LLC, but did provide for post confirmation dedicated payments of $250 monthly. The confirmation hearing in the second Chapter 13 case originally was scheduled for January 22, 2014.[1] The confirmation hearing has been continued to March 19, 2014.[2]

Dckt. No. 16. In this case Mr. Lugo ("Debtor") alleges a willful violation of the automatic

---

[1] The Stipulated Facts not in dispute actually listed the original confirmation hearing date as January 22, 2013, however this is an error and the date should have been stated as January 22, 2014.

[2] The Stipulated Facts not in dispute actually listed the continued confirmation hearing date as March 19, 2013, however this is an error and the date should have been stated as March 19, 2014.

stay that could have potentially occurred on two separate occasions.

The first occurred during Debtor's initial Chapter 13 case. On November 1, 2013, his counsel filed a Notice of Voluntary Dismissal. Ch. 13 Case No. 13-41308, Dckt. Nos. 1, 34. Debtor had been in communication with Islands Motorsports ("Defendant" or "Islands") for several months since the execution of his purchase of the motor vehicle because of difficulties he was having making payments. At one point he indicated to Defendant that he would be interested in owning a car that was less expensive to operate. Defendant, which had been notified by its counsel of Debtor's filing of the Notice of Voluntary Dismissal, repossessed Debtor's vehicle on November 4, 2013. Defendant allowed Debtor to drive the vehicle home that day to retrieve his personal belongings on the condition that Debtor would voluntarily turn the vehicle over to Defendant the following day. Debtor failed to do this, so Defendant located the truck at Debtor's residence and repossessed it on November 5. During the repossession Debtor informed Defendant that his case was still pending. Two days later, on November 7, 2013, the Court entered an Order dismissing the first Chapter 13 case in response to the earlier filed Notice of Voluntary Dismissal. Ch. 13 Case No. 13-41308, Dckt. No. 37.

The other willful violation could have occurred during Debtor's second Chapter 13 case. On November 7, 2013, Debtor's counsel filed a new Chapter 13 case which Debtor understood to mean that his former case had been reopened. While at his attorney's

✎AO 72A
(Rev. 8/82)

office, Debtor observed a paralegal place a call to Islands and leave a message; however, the contents of that message were excluded from the evidence as hearsay.

The next day, November 8, 2013, Debtor made contact with Islands, and later that day went to its business premises after notifying the police that he planned to do so. A police officer met Debtor on the scene where Debtor informed the officer that he had a copy of a document given to him by his attorney evidencing the fact that a new Chapter 13 case had been filed. Debtor gave the police officer the document so that he could show it to the representatives of Islands. The officer returned a few moments later after Debtor observed, but did not hear, a conversation between the officer and Defendant's representatives. The officer informed Debtor that Defendant had shown him a copy of the Court's Order dismissing the first case. He told Debtor that since the document he possessed did not have the signature of a judge, it was a "legal matter" that would have to be resolved in court rather than through the efforts of the police officers as intermediaries.

Debtor's counsel filed a Motion for Continuation of the Automatic Stay in the new case. Ch. 13 Case No. 13-42087, Dckt. No. 7. The Court issued a Notice of Hearing on that Motion on November 12, 2013, and a Notice of Creditors 341(a) Meeting on November 13, 2013. Ch. 13 Case No. 13-42087, Dckt. Nos. 9, 10. Creditors were served with these Notices via first class mail by the Bankruptcy Noticing Center (the "BNC") on November 14 and 15, 2013, respectively. Ch. 13 Case No. 13-42087, Dckt. Nos. 12, 15.

AO 72A
(Rev. 8/82)

Defendant denied receiving any notices from the Court until November 20, 2013.

Prior to the 20th, on November 17, 2013, in reliance on the Court's Dismissal Order dated November 7, 2013, Islands sold the car to a third party. The sale price received by Defendant for Debtor's truck was $5,999.00. Although this was lower than the published average auction price, Defendant testified that the sale price was based on the condition of the vehicle. This included the fact that there was no motor oil in the engine, and there had been some body damage, both of which contributed to the vehicle failing to qualify as average condition when it sold. However, Defendant contends, and I agree, that the sale price achieved reasonable fair market value given the condition of the vehicle.

The original retail installment contract with Debtor executed February 23, 2013, was later amended and executed on March 28, 2013, as illustrated on Exhibit D-1. It shows that Debtor was to make a cash down payment of $2,000.00, a deferred cash payment of $2,000.00, and regular monthly payments thereafter scheduled in the amount of $248.00. *Id.* Debtor in fact made the original and deferred cash payments and a $250.00 monthly payment on March 28, 2013, and April 15, 2013. Exh. D-4. From that point forward he was in default of the payment obligations, making sporadic payments until his first bankruptcy case was filed in July. *Id.* At trial it was stipulated that during the pendency of the first bankruptcy case, no payments were made by Debtor to the Trustee between the filing date and the date of the voluntary dismissal.

The Debtor filed this adversary proceeding to force turnover of the vehicle on November 18, 2013, and an expedited hearing was held on November 20, 2013. Dckt. Nos. 1, 7. At the hearing Defendant appeared and revealed that the vehicle had been sold. Dckt. No. 7. Subsequent to that time on January 10, 2014, Islands prepared buyer's orders for Debtor's consideration. Each would have had the effect of placing Debtor in a less expensive automobile. Exhs. D-7, D-8, D-9.

In the current case it is stipulated that payments have been made from Mrs. Lugo's salary, and that the case is only slightly in arrears. However, neither the Plan terms from the first, nor the second case, provide for any pre-confirmation adequate protection payments to Islands as required by 11 U.S.C. § 1326(a)(1)[3]. As a result, Defendant has not received any contract payments nor any other payments from either of Debtor's Chapter 13 cases since July 2013. Based on the earliest time that the current Plan might be confirmed, Defendant would receive no such payments until May 2014. Thus, even if the evidence is interpreted adversely to Defendant as to whether the repossession and sale were proper, Islands has counter-claimed asking the Court to retroactively annul the automatic stay based

---

[3] (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount – . . .

> © that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments of subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

11 U.S.C. § 1326(a)(1).

on the total failure of Debtor to provide any adequate protection of its collateral through payments.

At the conclusion of the evidence, Debtor's contentions, which must be addressed in this Order, are the following:

1) The Court's notices were properly mailed with the correct address on November 14 and November 15, 2013, and it should be presumed that they were received prior to November 17, 2013, when the sale of the vehicle occurred.

2) In the alternative, actual knowledge of the pendency of the case was conveyed to Defendant prior to the sale on November 17 by the telephone call from Mr. Lugo on November 8 telling Defendant that he was coming to their office accompanied by the police, the communications on Defendant's premises using the police officers as intermediaries, and telephone calls from Mr. Pytte's office to Defendant's office.

Since all of these events occurred before November 17, 2013, Debtor claims that there was a willful violation of the automatic stay, and he is entitled to damages.

The Defendant stands on its evidence which it believes established that no notice was received from the Court prior to November 20, 2013, and that Defendant had no

actual knowledge of the pendency of the second bankruptcy case prior to the sale of the vehicle on November 17.

Assuming that notice was properly given and Defendant's actions are deemed to constitute a willful violation, Debtor argues that damages are measured by his ability to obtain gainful employment which would have paid him $11.50 per hour, but which employment he could not maintain due to his lack of transportation to and from work. At trial Debtor requested lost wages from the beginning of December 2013 to the hearing date on February 10, 2014.

Defendant contends it is not liable for damages because there is no evidence of a willful violation, and even if there was a technical violation, the Court has ample evidence with which to determine that the stay should be annulled retroactively which would obviate any damage award.

CONCLUSIONS OF LAW

The automatic stay in bankruptcy is governed by 11 U.S.C. § 362. Upon the filing of a petition, § 362(a) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," as well as "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(3) and (6). Subsection (k)(1)

outlines the required circumstances and appropriate damages if a party violates the automatic stay. § 362(k)(1) provides in relevant part: "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

I need not decide whether the repossession on November 5, 2013, violated the stay when it occurred during the gap period between Debtor filing his voluntary dismissal on November 1, 2013, and the Court actually entering the Order of Dismissal on November 7, 2013, because a violation of the stay did undoubtedly take place later. Defendant exercised control over property of the estate and acted to collect on a prepetition debt when it sold the vehicle to a third party on November 17, 2013. Defendant did not dispute this fact; therefore, the Court will focus on this violation of the stay to determine "whether [Defendant's] actions support recovery under § 362[k], and if so, to what extent." Trull v. Nationscredit Commercial Corp. (In re Trull), 1995 WL 17005344, at *5 (Bankr. S.D. Ga. Jan. 26, 1995)(Dalis, J.), *vacated on other grounds*, 1995 WL 17005378, at *1 (Bankr. S.D. Ga. Feb. 02, 1995)(Dalis, J.).

It is well established in this Court that to prove a "willful" violation of the automatic stay, the debtor must show that the violator acted with knowledge of the filing of the bankruptcy petition. Davis v. Matt Gay Chevrolet, Inc. (In re Davis), 374 B.R. 366, 369



AO 72A
(Rev. 8/82)

(Bankr. S.D. Ga. 2007)(Davis, J.); Beasley v. Sea Island Bank (In re Beasley), 2006 WL 6902311, at *2 (Bankr. S.D. Ga. Aug. 31, 2006)(Davis, J.); Trull, 1995 WL 17005344, at *5; Livingston v. Central Bank of Swainsboro (In re Livingston), 1992 WL 12004360, at *6 (Bankr. S.D. Ga. March 30, 1992)(Dalis, J.). This knowledge must be demonstrated by a preponderance of the evidence. Davis, 374 B.R. at 369 (*citing* In re Robinson, 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998)). "Willful" only requires knowledge of the bankruptcy, and debtor need not establish a conscious attempt to harm by the creditor. Beasley, 2006 WL 6902311, at *2; Livingston, 1992 WL 12004360, at *6.

I. Notification from the Court

Debtor asks the Court to presume that the Notice of Hearing on Motion to Extend Stay mailed November 14, 2013, and the Notice of Creditors 341(a) Meeting mailed November 15, 2013, were received by Defendant prior to the sale of the vehicle on November 17, 2013. Debtor would certainly be correct in asking the Court to presume that Defendant received the notices. "As the Eleventh Circuit has noted, '[t]he common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee. This presumption of receipt arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail.'" Walter v. Deutsche Bank Nat'l Trust Co. (In re Walter), 489 B.R. 298, 306 (Bankr. S.D. Ga. 2012)(Davis, J.)(*quoting* In re Farris, 365 Fed.Appx. 198, 199 (11th Cir. 2010)). Here however, Debtor asks the Court to go one step further and presume the notices were received prior to the vehicle being sold

AO 72A
(Rev. 8/82)

on November 17. This I am unable to do.

In Nationsbank v. Bush (In re Bush), 169 B.R. 34 (W.D. Va. 1994), a district court addressed an issue on appeal with facts nearly identical to the ones before the Court. There, the debtor filed a Chapter 13 petition on September 17, 1993. *Id.* at 35. On September 20, 1993, the Clerk of the Bankruptcy Court mailed a notice of the bankruptcy filing to all creditors listed on the creditor matrix, and some two days later on September 22, 1993, Nationsbank, a secured creditor, sold the debtor's truck at auction. *Id.* Because the creditor presented no evidence that the notice was not delivered and received by its representatives, the bankruptcy court presumed the notice was delivered and held that the creditor committed a willful violation of the automatic stay. *Id.* at 36.

The district court held:

> the Bankruptcy Court fails to acknowledge the difference between receipt of the notice in general and receipt of the notice before the truck was sold. While the fact that the notice was mailed to the proper address and was not subsequently returned undelivered may support the conclusion that Nationsbank received the notice, it does not support the conclusion that Nationsbank received the notice before September 22, 1993. As stated *supra*, the issue for determination was not *whether* Nationsbank ever received the notice, but *when* Nationsbank received the notice.

✎AO 72A
(Rev. 8/82)

*Id.* Because the debtor did not present evidence to support a finding of when delivery occurred, the district court reversed the bankruptcy court's holding. *Id.* I agree with this rationale since the facts before the Court are essentially identical.

Defendant sold the vehicle on Sunday, November 17, meaning that the last day Islands could have received the Notices prior to the sale of the vehicle would have been Saturday, November 16. The BNC mailed the Notices on November 14 and 15. Debtor did not present evidence as to how long it normally takes for mail to reach Savannah, Georgia, from the BNC or any similar evidence. Therefore, the Court will not presume that Defendant received any notice of Debtor's bankruptcy from the BNC prior to the sale of the vehicle on November 17, 2013.

II. Actual Knowledge

Although there is no presumption that Defendant received Notice from the BNC before the sale of the vehicle, the Court may still find that Islands had actual knowledge of Debtor's bankruptcy filing. Defendant contends that it had no knowledge of the refiling until receiving a call from its attorney on November 19, 2013, informing its representatives of an expedited hearing to be held on November 20. However, there are several pieces of evidence that point to Islands having had actual knowledge. Debtor testified that he called Defendant on the morning of November 8, 2013, and informed its representative that he had documentation showing the case had been "reopened" and that he would be coming to

Islands with police officers later in the day. Defendant testified that it was actually someone claiming to be a police officer that called Islands on behalf of Debtor on the morning of November 8. Yet later when asked about the events of November 8 during cross examination, Defendant stated that "[Mr. Lugo] had called and said he was going to be there at three." During followup questioning, Defendant's attorney asked if Debtor informed Islands of his new case during the phone conversation on November 8, and Defendant testified, "To my knowledge, no. He just wanted to get his property." The testimony taken as a whole leads me to conclude that Debtor did speak with Defendant on the morning of November 8.

Second, Debtor testified that after refiling his petition, he visited his attorney's office regarding the repossession of the vehicle. While in the office he witnessed Shannon, a staff member of the attorney, call Islands. Debtor's testimony was that no one from Islands answered the call, but that he observed the staff member leaving a message on Defendant's voice mail. Defendant testified that Islands has electronic voice mail for its phone line and also a back up messaging system with Comcast if the line is busy, but that it received no messages from the attorney's office.

Finally, Debtor testified that when he arrived at Islands on the afternoon of November 8, he presented a document evidencing the new case to a police officer who then showed the document to Islands' representatives. Defendant denied having seen the

document, but what is important to the Court is that Debtor made Defendant aware of the existence of a document which related to the vehicle. The Court finds Debtor's testimony on that point persuasive.

Circumstantial evidence is evidence that does "not prove the ultimate fact, but rather an inference from which the ultimate or main fact [can] be drawn. The facts of a case may be proved or disproved by circumstantial evidence as well as direct evidence." Harris v. McClain, 152 Ga.App. 447, 448, 263 S.E.2d 233 (1979)(citations omitted); *see also* Beasley, 2006 WL 6902311, at *2 ("For a willful violation . . . there must be a showing of . . . [a] fact which at least raises an inference that the creditor is acting knowingly in conscious violation of the stay." (emphasis omitted)(citations omitted)(internal quotation marks omitted)). Although admitting that Debtor had a document when he came to Islands on November 8 does not necessarily prove that Defendant had knowledge of Debtor's bankruptcy petition, it raises an inference of that fact.

Actual knowledge encompasses more than "[direct and clear knowledge." BLACK'S LAW DICTIONARY p. 950 (9th ed. 2009). Actual knowledge is also defined as "[knowledge of information that would lead a reasonable person to inquire further . . . . - Also termed . . . implied actual knowledge." *Id.* Once Debtor came to Islands with the intention of taking the vehicle and Defendant became aware that Debtor had a document in his possession, it would have been relatively simple for Defendant to call its attorney and

inquire further. "At the very least a call to the office of the clerk of this court is required." Trull, 1995 WL 17005344, at *6.

Therefore I find that Debtor's testimony regarding the phone call he made to Defendant on the morning of November 8, the observation he made of his attorney's staff member leaving a message with Defendant, and the events that took place at Islands on November 8, along with Defendant's knowledge that Debtor possessed a document when he came to Islands to retrieve the truck proves by a preponderance of the evidence that Defendant had actual knowledge of the bankruptcy petition. At the very least, Defendant had information that would have led a reasonable person to inquire further. Because there was actual knowledge of Debtor's bankruptcy, I find that Defendant willfully violated the automatic stay when it sold the vehicle on November 17.

III. Defendant's Counter-claim

The basis of Defendant's counter-claim is that the Court has ample evidence with which to determine that Debtor failed to adequately protect its interest, and that the stay should be annulled retroactively. The Eleventh Circuit has recognized the bankruptcy court's ability to annul the automatic stay in "limited circumstances," thus granting retroactive relief. In re Albany Partners, Ltd., 749 F.2d 670, 675 (11th Cir. 1984). The court "acknowledged] that the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *Id.*

This Court has utilized the minimum requirements from the Middle District of Georgia for retroactive annulment of the stay.

> First, the creditor must demonstrate that it 'justifiably believed its action did not violate the automatic stay.' In other words, the violation must not have been willful. Second, the creditor must prove that it 'did not violate the policies underlying the automatic stay' by showing that its actions 'did not interfere with the 'breathing spell' created by the stay and that 'its foreclosure had no negative impact on other creditors.'

In re Lamb, 465 B.R. 714, 718 (Bankr. S.D. Ga. 2012)(Barrett, J.)(*quoting* In re Thomas, 319 B.R. 910, 912 (Bankr. M.D. Ga. 2004)). Because I find that Defendant willfully violated the automatic stay, the first requirement is not met, and retroactive annulment is not available.

## VI. Damages

"[An individual injured by any willful violation of a stay . . . *shall* recover actual damages . . . ." 11 U.S.C. § 362(k)(1)(emphasis added). In finding Defendant's violation to be willful, "this Court is required to award actual damages to the Debtor . . . ." Davis, 374 B.R. at 370. Debtor had a series of jobs following the filing of his second petition; however, he testified that he was unable to maintain steady employment due to a lack of transportation. At trial Debtor prayed for lost wages from the beginning of December 2013 to the date of the hearing on February 10, 2014.

AO 72A
(Rev. 8/82)

The evidence at the hearing supports that Debtor was hired by The Greenery as a full time landscaper at $11.50 per hour sometime after November 7, 2013. Debtor testified that his loss of use of the vehicle was the direct cause of his inability to remain employed by The Greenery. He was later hired by Jiffy Lube, but again, it was difficult for him to reliably get to work which eventually led to his dismissal. Comments made by Debtor's counsel during the expedited hearing on this matter held November 20, 2013, lead to the conclusion that Debtor lost his position at The Greenery sometime before November 20 and gained employment with Jiffy Lube shortly thereafter; however, the exact dates of Debtor's stint at The Greenery are unknown. Therefore, the Court will leave the record open and allow Debtor to file any payroll records, subject to objection by Defendant, that illustrate detailed information regarding his employment at The Greenery. These records at a minimum should establish the dates of employment, hours worked per week, and gross and net pay earned during his employment. Once these payroll records are filed and the Court is satisfied with the sufficiency of the documentation, I will consider an award of lost wages.

"In assessing damages, [the Court] must first determine the nature of the interest taken in violation of the stay." *Id.* Although Debtor seeks lost wages up until the date of the hearing, he would have most certainly only retained his interest in the vehicle temporarily.

When Debtor filed his first Chapter 13 petition on July 23, 2013, he was

AO 72A
(Rev. 8/82)

approximately two months in arrears on his monthly payment obligation. Debtor's first Plan provided no pre-confirmation adequate protection to Islands, and he made no payments to the trustee or any other creditor during the pendency of that case. Debtor's Plan in the current case also fails to provide adequate protection for Islands. The trustee filed a Motion recommending confirmation of Debtor's current Plan on March 19, 2014. With a Confirmation Order forthcoming from the Court, Defendant is correct in arguing that it would not have received any payment until May 2014. Ten months without payment constitutes a lack of adequate protection of Defendant's interest in the vehicle. Debtor did not address Defendant's argument on this point at the hearing. Pursuant to § 362(c)(3)[4], I find it inconceivable that Debtor could have convinced the Court to extend the stay as to Islands past thirty (30) days from the filing of the second case. Therefore, had Defendant followed the requirements of the bankruptcy code, held the vehicle, and objected to Debtor's Motion for Continuation of the Automatic Stay, it is a foregone conclusion that the Motion would have been denied with respect to Islands, and the stay would have lapsed after thirty (30)

---

4

> (3) [I]f a single or joint case is filed by . . . a debtor who is an individual in a case under chapter . . . 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed . . .
>
> > (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt . . . shall terminate with respect to the debtor on the 30th day after the filing of the later case;
> >
> > (B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors . . . after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; . . . .

11 U.S.C. § 362(c)(3).

days. As a result, Debtor's lost wages attributed to the loss of use of the vehicle will be capped at thirty (30) days from the filing of the second petition. Because Debtor filed his second petition on November 7, 2013, he will be eligible for lost wages from the date he lost his position at the Greenery through December 7, 2013.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is the ORDER of this Court that on or before April 21, 2014, Debtor file payroll records with the Court evidencing the requested details mentioned *supra* regarding his position at The Greenery. If no objection is filed to the records by April 28, 2014, and they are found to be satisfactory by the Court, a further Order will be issued detailing the amount of lost wages to be paid to Debtor by Defendant and other damages if applicable.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 31st day of March, 2014.